IDA FALKEN, ADMINISTRATRIX, *vs.* THE HOUSATONIC RAIL-
ROAD COMPANY.

New Haven & Fairfield Cos., June T., 1893. ANDREWS, C. J., CARPEN-
TER, TORRANCE, FENN and F. B. HALL, JS.

The act of 1889 (Session Laws of 1889, ch. 157,) provides that " in every
action of tort in which the defendant suffers a default and there is a
hearing in damages, the hearing shall be to a jury unless the defaulting
defendant hall give notice " etc. Held that a demurrer to a complaint
overruled and a failure of the defendant to answer over, did not consti-
tute a default, and that the hearing in damages in such a case did not
fall within the statute and was to be held before the court and not be-
fore the jury.

[Argued June 8th—decided July 6th, 1893.]

ACTION to recover damages for the death of the plaintiff's
intestate, caused by the negligence of the defendant company;
brought to the Superior Court in Fairfield County, and heard
in damages by a jury, on a demurrer overruled, before *Thay-
er, J.* Damages assessed at $5,000, and appeal by the defend-
ant for error at a former term in the granting of a motion of
the plaintiff that the case be heard by a jury. The case is
fully stated in the opinion.

*G. Stoddard* and *W. D. Bishop*, for the appellant, contended
that until the act of 1889 was passed, all hearings in damages
were by the court and not the jury; (Gen. Statutes, § 1106;
*Lennen* v. *Rawitzer*, 57 Conn., 583,) and that that statute ap-
plied only to cases of literal *default*, and had no application
to a case like the present one, where there was a demurrer
to the complaint and an overruling of the demurrer; and
that the court below erred in granting the plaintiff's motion
for a hearing before the jury.

*M. W. Seymour* and *H. H. Knapp*, for the appellee.
The general dissatisfaction with the rule that all hearings
in damages should be before the court and not before a jury, is

a matter within the judicial knowledge of the court. That dissatisfaction culminated in the enactment in 1889 of the following statute: " In every action of tort in which the defendant suffers a default and there is a hearing in damages, said hearing in damages shall be to the jury unless the defaulting defendant shall have given notice of his intention to suffer such default to the clerk of the court in which such action is pending, within thirty days after the time fixed by law for closing the pleadings in such action shall have expired." That the legislature intended to give this plaintiff and others situated as she was the benefit of having their damages assessed by a jury, cannot for one moment be questioned. What constitutes a default? " Judgments go by default, properly speaking, whenever between the commencement of a suit and its anticipated decision in court, either party omits to pursue, in the regular method, the ordinary measure of prosecution or defense. Hence judgment by default, when it goes against the defendant, is an implied admission of the charges advanced." Petersdorff's Abr., tit. " *Judgment by Default*." " A judgment by default is either by *nihil dicit*, where the defendant appears but says nothing, or by *non sum informatus*. Judgment by default is either for want of any plea at all, or for want of a plea adapted to the nature of the case. * * * A judgment by default is interlocutory or final. Where the action sounds in damages, as in assumpsit, covenant, trover, trespass, etc., the judgment is interlocutory that the defendant ought to recover his damages, leaving the amount of them to be afterwards ascertained. After an interlocutory judgment a writ of inquiry of damages is in general awarded, directing the sheriff by the oath of twelve honest and lawful men diligently to inquire into the damages and return the inquest into court." Tidd's Prac., 166. Swift in his System, (Vol. 2, p. 267,) says: " Where the action is founded on a tort, as trespass, assault and battery, or slander, if on demurrer judgment be rendered against the defendant, or if he refuses to plead, or makes default of appearance, then judgment may be rendered against him for the sum demanded by the plaintiff, unless he moves for a hearing in dam-

Falken v. Housatonic R. R. Co.

ages, in which case the court may go into an inquiry of witnesses with respect to all facts which are necessary and proper to enable them to ascertain the damages, and then they will render judgment for such sum as they shall judge to be just and reasonable. Our courts possess the same power to assess damages as a jury in England upon a writ of inquiry issued to the sheriff for that purpose. The practice of this state, introduced by our courts without the authority of a statute, of assessing the damages themselves without the intervention of a jury, is one of the many instances in which we have improved upon the common law of England." In *Hickman* v. *Balt. & Ohio R. R. Co.*, 30 W. Va., 296, 299, SNYDER, J. delivering the opinion says:—"According to the common law, when there was an interlocutory judgment whereby the right of the plaintiff was established, but the quantum of damages sustained by him was not ascertained, the plaintiff was entitled to the intervention of a jury to ascertain his damages. This is the case where the defendant suffers judgment to go against him by default, or *nihil dicit*, and that is where he puts in no plea at all to the plaintiff's declaration ; or by *non sum informatus*, when the defendant's attorney declares that he has no instructions to say anything in answer to the plaintiff or in defense of his client. This is a species of judgment by default. If this or any of them happen in actions where the specific thing sued for is recovered, as in actions of debt for a sum certain, the judgment is absolutely complete. But where damages are to be recovered a jury must be called in to assess them, unless the defendant to save charges will confess the whole damages laid in the declaration. Otherwise the entry of the judgment is ' that the plaintiff ought to recover his damages, but because the court knows not what damages the said plaintiff hath sustained, therefore the sheriff is commanded that by the oath of twelve honest and lawful men he inquire into said damages and return such inquisition.' " See also 3 Black. Comm., 397 ; Stephen on Pleading, 137 ; 1 Black on Judgments, 15 ; *Brill* v. *Neele*, 1 Chitty, 618 ; *Clements* v. *Berry*, 11 Howard, 398. Also the opinion of this court in *Lennon* v. *Rawitzer*, 57 Conn., 583 ; and

opinion of Shipman, J., in *Raymond* v. *Danbury & Norwalk R. R. Co.*, 43 Conn., 596.

Fenn, J.   The defendant in this action, which was brought to recover damages for injuries resulting in the death of the plaintiff's intestate, filed on December 31st, 1890, in the Superior Court, in which the action was pending, a demurrer to the complaint, which demurrer was heard and overruled April 29th, 1892.   Nothing further was done until the October term of the court, 1892, when the case was put by the plaintiff on the trial list marked "jury," and on motion of the plaintiff was assigned for a hearing in damages to the court on December 21st, 1892.   At that time both parties appeared with their witnesses, and the plaintiff, after the papers were read, moved that the cause be heard in damages to the jury.   No jury was or had been in attendance during the term and none was to be summoned at that session.   No previous notice of such motion had been given to the defendant.   The defendant objected to granting the motion, on the ground, first, that under the practice of the court the cause could only properly be heard in damages to the court, and, second, that the motion came too late; but the court granted the motion, and continued the cause to be heard by the jury in damages at the next session, where the cause was so heard, resulting in a verdict and judgment for the plaintiff for five thousand dollars damages.

In view of the conclusion which we have reached, which renders the other questions raised upon the defendant's appeal unimportant, the only question which we shall consider is, whether the defendant's first objection, as above stated, to a hearing in damages by a jury, should have been sustained. It is conceded that the question narrows itself to purely one of construction of chapter 157 of the public acts of 1889, since, by the immemorial practice in this state, supported by repeated decisions and sanctioned by statute, damages in such cases are assessed by the court, without the intervention of a jury.   The act of 1889 provides that "in every action of tort, in which the defendant suffers a default, and

there is a hearing in damages, said hearing in damages shall be to a jury, unless the defaulting defendant shall have given notice of his intention to suffer such default to the clerk of the court in which such action is pending, within thirty days after the time fixed by law for closing the pleadings in such action shall have expired." The inquiry is, whether the defendant should be held within the intent and meaning of this act to have "suffered a default," and to be a "defaulting defendant."

The record shows that after the demurrer was overruled no further pleadings or answer over were filed by the defendant, and it is the claim of the plaintiff that "upon the overruling of a demurrer the case stands without answer; that one of two courses is open to the defendant, to let the case stand without answer or to answer over; and if he answers over, the cause is tried upon the issue raised by that answer; and if he does not see fit to answer over, he suffers a default, whereupon the plaintiff is entitled to judgment on the cause of action set forth in his complaint, if it is capable of exact ascertainment, and if not, an ascertainment of the damages by a court or jury upon a hearing in damages."

Now, in reference to the above claim, it is true that by virtue of our statute, Gen. Statutes, § 1014, in all civil actions upon the overruling of a demurrer a party may plead over. That is a privilege accorded. But if a party fails to avail himself of that privilege, he stands as if it had not been granted, and judgment is rendered upon demurrer. If judgment upon demurrer ever meant anything different from judgment upon default, it means so still as applied to one who fails to avail himself of the statutory privilege of pleading over. That it has had such distinct meaning is manifest even from the citations made by the plaintiff to show the contrary. Thus Swift in his System, Vol. 2, page 267, says: "Where the action is founded on a tort, if on demurrer judgment be rendered against the defendant, or if he refuses to plead, or makes default of appearance, etc.," and the same distinction runs throughout all the other numerous citations made. Black, in his work on Judgments, Vol. 1, § 12, class-

ifies judgments as of four kinds ;—1, Judgments on an issue
of law ; 2, Judgments upon a verdict ; 3, Judgments without
a verdict; 4, Judgments against a verdict.  In section thirteen
he treats of the first, saying—" These judgments are given
upon the decision of a demurrer ; " and classifies them, the
first class being " for the plaintiff when the issue raised by a
demurrer to any of the pleadings is decided in his favor."  Of
this judgment he says—" It is final and definitive and con-
cludes the right of action.  Its style is *quod recuperat.*"  In
section fifteen, in treating of the third class, judgments with-
out verdict, he gives as the first of numerous varieties, " judg-
ment by *default*," saying—" This is a judgment entered in
consequence of the non-appearance of the defendant.  Where
the defendant omits to plead within the time required, the
judgment taken against him for that cause is more properly
called *nil dicit*, but the term ' default ' is usually extended to
cover this case also."  In *Lennon* v. *Rawitzer*, 57 Conn., on
p. 585, LOOMIS, J., delivering the opinion of the court, defines
a default as " a common law judgment which was entered
when the defendant neglected or refused to appear, or when
he acknowledged the action to be just and withdrew his ap-
pearance "—a definition which clearly does not embrace judg-
ments upon demurrer, whether such judgments be regarded
as final or interlocutory.  They are indeed doubtless the
latter in such a case as the one now under consideration, for
two reasons ; first, because being in an action for unliquidat-
ed damages, it is, as a default also would be in such a case,
an incident which entitles the plaintiff to judgment, but does
not determine the amount of such judgment; (*Sheldon* v.
*Sheldon*, 37 Verm., 152 ; *Holcomb* v. *Town of Winchester*, 52
Conn., 448 ;) and second, because the statute passed in 1872,
allowing a party upon the overruling of a demurrer to plead
over, causes the interlocutory judgment of *respondeat ouster*
to be entered.   But in reference to the latter point, as said
by this court in *Denton* v. *Town of Danbury*, 48 Conn., 372,
" if the party entitled to plead or answer over refuses or neg-
lects so to do, the court must render judgment in favor of
the plaintiff for his damages and costs, if the demurrer be

determined in his favor." And this judgment, when render-
ed and final, either because immediately so, the damages be-
ing liquidated, or after damages assessed if unliquidated, is a
judgment upon demurrer and not on default. Even if it
were admitted that the defendant was bound to answer over,
and that he was, in common parlance, in default for failing
so to do, we do not see as that would support the plaintiff's
contention, for in the single case where at common law a
judgment of *respondeat ouster* was rendered upon a defend-
ant's demurrer, that is, where a defendant demurred for a
variance between declaration and writ, and pending demur-
rer leave was granted to amend, and thereupon demurrer was
overruled, (*Walker* v. *Walker*, 6 Howard, Miss., 500,) or in
the cases where the plaintiff's demurrer to the defendant's
dilatory plea is sustained, and thereupon the defendant is
ordered to answer over or further, (*Cook* v. *Crawford*, 1
Texas, 9; *Trow* v. *Messer*, 32 N. Hamp., 361;) "the practice is
to give judgment that he answer over, after which, and on
his failure to plead to the merits, he may be defaulted."
Black on Judgments, Vol. 1, sect. 89. This is akin to the
rules under our practice act. See 58 Conn., p. 566, section
1, which provides that upon failure to plead agreeably to
rule or the order of the court, " the court may, on motion of
the other party, order a nonsuit, default, or judgment on a
cross-complaint, counter-claim or set-off, as the case may be."
Why order a default in such case, if failure to plead itself
constituted a default without such order?

But after all, to do the plaintiff's case full justice, the real
contention appears to be that the overruling of the defend-
ant's demurrer, with failure of the defendant further to an-
swer within the time limited by the rules of court, is equivalent
in its effect to a default; that the right established to a final
judgment for damages, and the procedure to ascertain and
fix the amount of such damages, are identical in both cases;
and that being so, there is no reason to infer that the legis-
lature intended by the act in question to create a difference
where none existed before in fact, or now exists in principle,
but that the opposite inference should be drawn, and the act
construed as extending to demurrers overruled, with failure

to answer over, as being "the clear intention of the legislature, sufficiently expressed."

We fully agree that there is force in the claim that such intention should be imputed to the legislature, and will further say that the claim is strengthened by the consideration of the language which has sometimes been used by this court. Thus, in *Daniels* v. *Town of Saybrook*, 34 Conn., 377, the court, BUTLER, J., said on page 381:—" The defendants in this case, by demurring to the declaration, defaulted as to the facts sufficiently alleged and essential to constitute a cause of action, and thereby admitted them. When their demurrer was overruled, their case stood as upon default, with all the essential elements of the cause of action, and the right of the plaintiffs to recover some damages, conclusively admitted;" and this language thus made use of in that case, before the act of 1872 permitting answer over was passed, was repeated with apparent full approval in *Crane* v. *Eastern Transportation Line*, 48 Conn., 366, after the passage of that act. Nor does it substantially weaken the argument as to the inferred intent of the legislature to say, as is undoubtedly true, that such language was uttered with no reference to any point under consideration in this case, and that properly understood, with the words " defaulted as to the facts " limited by the subsequent expression that " the case stood as upon default, with all the essential elements of the cause of action and the right of the plaintiffs to recover some damages conclusively admitted," means nothing more than that a judgment upon demurrer, that is, on an issue of law, establishes the same right in the plaintiff, and entitles the plaintiff to the same further procedure to perfect such right, as would follow from a default.

But notwithstanding these strong grounds we are forced to the conclusion that we ought not to construe the act in question as claimed by the plaintiff. There are, as appears to us, even more conclusive reasons for the opposite conclusion. The assessment of unliquidated damages by the court, in cases both of default and of demurrer overruled is not alone in consonance with " the uniform practice of the courts of this state ever since they have existed," (*Lennon* v. *Raw-*

*itzer, supra,* p. 584,) but also a statute originally passed in 1821, ever since continued upon our statute book, and now General Statutes, § 1106, provides that " in all cases where a judgment is rendered, otherwise than on a verdict, in favor of the plaintiff, the court shall assess the damages which he shall recover." Against the settled policy of the state, so often declared by the courts, so long and uninterruptedly continued, for more than seventy years sanctioned by the direct and positive provisions of the statute, it appears to us that no rules or canons of construction justify our extending the provisions of the act of 1889 beyond its express terms. In more than a score of Connecticut cases in the Supreme Court reports, as also in General Statutes, § 1118, and in Swift's Digest, the expression " default or demurrer overruled " has been used as clearly meaning and intending two things, not one, and not convertible. In the general rules of practice in the book containing the practice act and rules of 1879, at page 248, in the arrangement of cases for assignment and trial according to the order of privilege, hearings in damages on default stand as one class, No. 14, and hearings in damages on demurrer overruled as another, No. 15. This is now changed, however; 58 Conn., p. 576; No. 9, embracing " hearings to the court in damages on default or demurrer overruled."

Such being the case, it seems to us that if the legislature had purposed to change the law, both common and statute, in reference not only to defaults properly and commonly so called and understood, but also in regard to demurrers overruled in which no judgment of default for failure to plead had ever been moved for by counsel or ordered by the court, it would have been natural and easy to adopt the form of expression so popularly and universally in use; and that failing to do so, it may be and ought to be inferred that such was not its intention; and we therefore hold that the plaintiff was not entitled to have her damages assessed by the jury.

There is error in the judgment complained of, and the case is remanded for a new trial or hearing in damages by the court

In this opinion the other judges concurred.