## NATHANIEL RATNER ET AL. *v.* EARL EDWARD WILLAMETZ ET AL.
### (4355)

DUPONT, C. J., HULL and HAMMER, Js.

Argued October 9, 1986—decision released February 3, 1987

*Thomas A. Weaver,* with whom, on the brief, was *Dennis C. Lanzoni,* for the appellants (plaintiffs).

*M. Daniel Friedlander,* for the appellees (defendants).

DUPONT, C. J. This appeal arises out of an action brought by the plaintiffs[1] against the defendants[2] for alleged fraud in a failed joint venture for the development of a parcel of land. Its difficulty lies in its procedural setting which is the judicial equivalent of Abbott and Costello's problem of "Who's on first."

The factual setting begins in 1968 when the defendant acquired an option to purchase a 17 acre portion of 30.6 acres of land. The sellers refused to sell and the defendant sought specific performance of his option. While that suit was pending, the defendant and the plaintiff executed a written agreement to form the Greater Connecticut Development Corporation, which would take title to the land under option and to adjacent land owned by the plaintiff in order to develop it for moderate income housing.[3] The plaintiff paid

---

[1] The plaintiffs are Nathaniel Ratner and the Greater Connecticut Development Corporation, a corporation formed by Ratner and Edward Willametz. Pursuant to an agreement between Ratner and Willametz, 2500 shares of its stock were to be owned by Ratner, 2495 shares were to be owned by Jeffrey and Linda Willametz and 5 shares were to be held by Edward Willametz. Unless otherwise noted, the word plaintiff refers to Ratner.

[2] The defendants are Edward and Audrey Willametz, their children Linda and Jeffrey Willametz, and Glen Valley Associates, Inc., a corporation controlled by Edward Willametz. Edward Willametz is also known as Earl Edward Willametz. Unless otherwise noted, the word defendant refers to Edward Willametz.

[3] The record does not reveal whether the corporation ever obtained title to the adjacent land.

$55,000 to a trustee for the corporation for the acquisition of the 17 acres under option. Unknown to the plaintiff, the defendant subsequently arranged to buy the entire 30.6 acres from the sellers. The trustee took title to the entire parcel and, at the defendant's instruction, conveyed the 17 acre portion to the corporation, and the remaining 13.6 acres to the defendant's newly formed corporation, Glen Valley Associates, Inc. The consideration for the purchase of the entire 30.6 acres consisted of the $55,000 contributed by the plaintiff and the withdrawal of the defendant's suit arising out of the sellers' initial failure to convey the land under option. The deed to the 17 acres was recorded immediately after the closing and the deed to the additional 13.6 acres was recorded by the defendant one week later, on January 29, 1971.

When the plaintiff learned, in 1980, that the defendant's corporation, Glen Valley Associates, Inc., had acquired 13.6 acres of the land, the plaintiff instituted this action in three counts. The plaintiff's appeal is from the judgment of the trial court, *Satter, J.,* rendered after a hearing in damages.

The hearing in damages was held after three prior trial courts had entered various defaults against the defendants, and rendered judgments upon those defaults. A default against the defendant, Edward Willametz, was entered by the trial court, *N. O'Neill, J.,* for his failure to answer questions at a deposition. After the defendant failed to attend seven rescheduled depositions, the trial court, *Brennan, J.,* rendered judgment upon the default against the defendant, but did not grant any legal or equitable relief to the plaintiffs. The defendant's motion to open the judgment was subsequently denied by another trial court, *Borden, J.* A default against the defendants, Audrey, Linda and Jeffrey Willametz and Glen Valley Associates, Inc., was entered on another date by the trial court, *N. O'Neill, J.,*

because of their failure to appear for trial. That trial court, upon the plaintiff's subsequent motion for judgment, rendered judgment against these defendants, and granted all of the equitable relief requested in the first and second counts of the complaint, but reserved any award of monetary damages for determination at a future hearing in damages. The equitable relief was granted without any hearing.

To understand the posture of the case when the hearing in damages began, it is necessary to examine the various counts of the plaintiff's complaint and the particular judgments which had already been rendered upon the defaults. This must be done because the plaintiff's primary claim of error on appeal is that the trial court, *Satter, J.,* erred in not giving effect to the judgments already rendered by the other trial courts and erred in examining anew the right of the plaintiff to equitable relief. The plaintiff claims that the trial court effectively overruled the judgments rendered by its coordinate trial courts.

The first count of the plaintiff's complaint alleged that the defendants had fraudulently induced the plaintiff to enter into the agreement. In that count, the plaintiff sought recission of the agreement executed by the plaintiff and the defendant, a declaratory judgment naming the plaintiff as the sole owner of all of the stock of Greater Connecticut Development Corporation, an order directing the transfer of all of the corporate assets to the plaintiff, and monetary damages. This count sought relief against the defendants Edward, Jeffrey and Linda Willametz, but did not involve Glen Valley Associates or Audrey Willametz. In rendering judgment upon the defendants' defaults, however, the trial court, *N. O'Neill, J.,* granted the equitable relief sought against *all* of the defendants except for Edward Willametz. The issue of whether the agreement between Edward Willametz and the plaintiff should be rescinded

obviously only involved those two parties. The relief sought in count one, as against Edward Willametz, was specifically reserved for a hearing in damages by the trial court, *Brennan, J.,* which had rendered the judgment against him upon the default. Any judgment rendered by the trial court, *N. O'Neill, J.,* granting equitable relief on this count as to the other defendants, therefore, was of no consequence. The judgment of that same trial court, declaring the plaintiff the owner of all of the stock of Greater Connecticut Development Corporation and directing the transfer of its assets to the plaintiff also could have no effect because the defendant, Edward Willametz, was the designated owner of five shares of the stock. Any determination of ownership or transfer of stock inextricably involved the defendants against whom judgment had been rendered *and* Edward Willametz.

The second count of the plaintiff's complaint sought a judgment declaring the Greater Connecticut Development Corporation to be the owner of the 13.6 acres of land which had been conveyed to Glen Valley Associates, Inc., an order requiring Glen Valley Associates, Inc., to convey the land to Greater Connecticut Development Corporation, and monetary damages. This count sought relief against Edward Willametz and Glen Valley Associates, Inc., only and did not involve the other defendants. The allegations of the count include the statements that Edward Willametz and Glen Valley Associates, Inc., conspired to deprive the Greater Connecticut Development Corporation of the full benefit of the purchase of the entire parcel of land. The trial court, *N. O'Neill, J.,* which rendered judgment granting the equitable relief sought, did so as against *all* of the defendants except for Edward Willametz. Because of the allegations of this count, and the fact that no judgment granting equitable relief against Edward Willametz had yet been rendered, it is difficult to under

stand how the hearing in damages could have been conducted on the premise that the equitable relief against Glen Valley Associates, Inc., could be divorced from any equitable relief to be awarded against the defendant Edward Willametz.

The third count of the complaint alleged that the defendants defrauded the plaintiff by taking title to and possessing the secretly purchased property and, while in possession, injured the premises and caused waste. This count involved the plaintiffs Ratner and Greater Connecticut Development Corporation, and the defendants Edward and Audrey Willametz and Glen Valley Associates, Inc., and sought monetary damages only. The parties agree that no trial court rendered judgment in any particular amount against any of the defendants, since both trial courts involved in the rendering of the judgments upon default specifically reserved the monetary damages for resolution at a hearing in damages.

At the hearing in damages, the plaintiff presented evidence in support of the allegations in the complaint, and the defendants, without objection, presented evidence in opposition. The defendants had previously filed a notice of defense pursuant to Practice Book § 367,[4] claiming that they intended to contradict the plaintiff's allegations on the basis that they were false.[5]

---

[4] Practice Book § 367 provides that "[i]n any hearing in damages upon default suffered or after a denial of a motion to strike, the defendant shall not be permitted to offer evidence to contradict any allegations in the plaintiff's complaint, except such as relate to the amount of damages, unless he has given notice to the plaintiff of his intention to contradict such allegations and of the subject matter which he intends to contradict, nor shall the defendant be permitted to deny the right of the plaintiff to maintain such action, nor shall he be permitted to prove any matter of defense, unless he has given written notice to the plaintiff of his intention to deny such right or to prove such matter of defense."

[5] In its memorandum of decision, the trial court noted that the notice of defense filed by the defendants contained a general denial, and was therefore ineffective under the provisions of Practice Book § 371. Section 371 provides, in pertinent part, that "[t]he notice shall not contain a general

The trial court found that the plaintiff had failed to prove that the defendants had fraudulently induced him to enter into the agreement, and the court therefore rendered judgment for all of the defendants on the first count of the complaint. The trial court, therefore, did not rescind the agreement between the plaintiff and the defendant. The count further found that the defendants Edward Willametz and Glen Valley Associates, Inc., concealed from the plaintiff and Greater Connecticut Development Corporation the conveyance of 13.6 acres, and that such concealment was fraudulent. It therefore rendered judgment for the plaintiff Greater Connecticut Development Corporation on the second count of the complaint, and ordered the defendant Glen Valley Associates, Inc., to convey the parcel it had fraudulently obtained to that plaintiff. The court rendered judgment for the plaintiff Greater Connecticut Development Corporation on the third count against the defendants Edward Willametz and Glen Valley Associates, Inc., in the amount of $113,908.[6] Finally, the trial court rendered judgment for Audrey, Jeffrey and Linda Willametz on all three counts of the complaint.[7]

denial, but shall specify which, if any, of the allegations, or parts thereof, of the complaint will be controverted . . . ."

Despite the insufficiency of the defendants' notice of defense, the trial court permitted the defendants to introduce evidence at the hearing in damages to contradict the allegations contained in the plaintiff's complaint. The plaintiff, however, failed to object to this evidence at the hearing or on appeal.

[6] The total amount of $113,908 awarded to the plaintiff by the trial court on the third count of the complaint was determined by awarding $20,000 for waste to the building attributed to loss of rental, $25,000 for unpaid taxes and interest on the property from 1971 to date, and $68,908 for punitive damages measured by attorney's fees.

[7] It should be noted that although the trial court rendered judgment for Audrey, Jeffrey and Linda Willametz on all three counts of the complaint, Audrey Willametz was not named in the first count of the complaint. Moreover, Audrey, Jeffrey and Linda Willametz were not named in the second count, and Jeffrey and Linda Willametz were not named in the third count of the complaint.

# I

The first claim of error on appeal is that the trial court, *Satter, J.,* erroneously rescinded the equitable relief previously granted by a coordinate trial court, *N. O'Neill, J.* The voluminous record with which the trial court had to deal, as well as the conduct of the parties, had a tendency to obfuscate the complex procedural issues that were before the court at the hearing in damages.[8]

Although the court, *Satter, J.,* stated incorrectly in its memorandum of decision that the prior judgments awarded no equitable relief, which was not, in fact, the case, it was nevertheless correct in its rulings because no equitable relief could appropriately have been granted by any prior judgments, given the facts and the pleadings in this case.

Our initial inquiry in this case is to determine whether the judgment rendered by the trial court, *N. O'Neill, J.,* upon the defaults of the defendants other than Edward Willametz was an interlocutory or final judgment. We conclude that the prior judgments upon default were, in effect, interlocutory, and therefore, nonfinal and nonbinding based upon the peculiar circumstances of this case.[9]

---

[8] We note that even at the appellate level, the record reflects that the complexity of this case was in large part contributed to by factors such as the numerous motions brought by the same parties, the inexplicable but nonetheless disturbing disappearance of documents from the trial court file which necessitated an order from this court restricting the review of the case file by the parties, and the filing and ultimate dismissal of a separate appeal by the defendants.

[9] In its memorandum of decision, the trial court stated: "Thus, this court will treat the judgments of default, granted herein without evidence, as interlocutory, and will decide the issues as presented by the parties: namely, whether the plaintiffs are entitled to the equitable relief claimed and to monetary and punitive damages. To do otherwise, would render useless

Although a judge is not bound to follow the rulings or decisions of another judge made at an earlier stage of the proceedings; *Santoro* v. *Kleinberger,* 115 Conn. 631, 638, 163 A. 107 (1932); this rule applies only when the prior decision was interlocutory in nature. A final decision, including a final judgment rendered after default, is conclusive and is therefore given res judicata effect in subsequent proceedings. *Slattery* v. *Maykut,* 176 Conn. 147, 157, 405 A.2d 76 (1978).

It has been recognized that a judgment by default can be either interlocutory or final. *Falken* v. *Housatonic R. R. Co.,* 63 Conn. 258, 259, 27 A. 1117 (1893). The parameters of finality, however, are not easily ascertained. The basic premise that is followed in the complex and uncertain area of finality of judgments is that a final judgment is one that ends litigation on the merits and leaves nothing for the court to do but execute the judgment. No formula has yet been devised which elucidates this concept of finality with unerring accuracy. This case presents a unique situation in which the determination of the finality of the default judgments rendered against the defendants entails the resolution of difficult procedural issues.

Although it is possible to have a final judgment as to equitable issues, leaving the resolution of legal issues in the same case to a hearing in damages; *Ricci* v. *Naples,* 108 Conn. 19, 22, 142 A. 452 (1928); such was not possible in this case. The trial court, *N. O'Neill, J.,* rendered judgment and granted equitable relief against various defendants. It, in effect, rendered judgment against defendants who were either not involved in the relief which could be granted, or whose rights were so involved with another defendant against whom no equitable relief was granted, that no relief as against

the fifteen trial days devoted to the case. Moreover, after this court has heard all the evidence, it would be unconscionable to ignore that evidence in ruling on claims for equitable relief."

them could be awarded. As previously noted, the remedy of recission of the agreement could only involve the defendant Edward Willametz, against whom no judgment for equitable relief had been rendered. The other issues presented in the first count of the complaint could not have been resolved for or against any of the defendants without a resolution of those issues as to the defendant Edward Willametz as well. These issues as to Edward Willametz were specifically to be resolved at the hearing in damages. The same reasoning applies to the second count of the plaintiff's complaint. We conclude that the judgment rendered by the trial court, *N. O'Neill, J.,* could not be final for these reasons.

In its ruling on the hearing in damages, the trial court, *Satter, J.,* maintained that because the plaintiff had sought equitable as well as legal relief in his complaint, the plaintiff was required to prove every allegation of his complaint before relief could be granted. The trial court noted that evidence was not taken by the court, *N. O'Neill, J.,* prior to its rendition of judgment upon the defaults entered against some of the defendants. Thus, because the plaintiffs had not been required to prove their right to the equitable relief granted, the trial court treated the judgments rendered against the defendants without a hearing as nonfinal and therefore interlocutory in nature.

In addressing the propriety of the trial court's action, it is necessary to review and summarize the precepts and intricacies involved in the rendition of default judgments. It is axiomatic that the judgment rendered upon a default, and not the mere entry of a default, constitutes a final judgment. *Automotive Twins, Inc.* v. *Klein,* 138 Conn. 28, 33, 82 A.2d 146 (1951). A judgment of default normally requires a two step process. The first step is the entry of a judicial ruling of default, which constitutes a technical admission by the defendant of

the truth of the facts alleged in the complaint. 1 E. Stephenson, Connecticut Civil Procedure § 157, p. 633. The second step of the process is the hearing in damages, in which the plaintiff must still prove how much of the judgment prayed for in his complaint he is entitled to receive. *DeBlasio* v. *Aetna Life & Casualty Co.,* 186 Conn. 398, 401, 441 A.2d 838 (1982). It is normally only after these two steps are completed that a judgment on default may be rendered.

An action brought by a plaintiff which requests equitable instead of legal relief poses a situation in which a determination of monetary damages in a hearing in damages is not appropriate.[10] The plaintiff, however, is still required to establish his right to receive equitable relief after the entry of default. 1 E. Stephenson, Connecticut Civil Procedure § 163. This necessarily entails a hearing in which the plaintiff must prove the matters he has alleged in his complaint. Id.; see also *Starr Cash & Package Car Co.* v. *Starr,* 69 Conn. 440, 441, 37 A. 1057 (1897). Thus, in contrast to a default entered in a legal action, the facts alleged in the plaintiff's complaint are not treated as confessed when a default is entered in an equitable action. Id. In equitable as well as legal actions, however, the entry of a default bars a defendant from asserting a defense. *Kloter* v. *Carabetta Enterprises, Inc.,* 186 Conn. 460, 464, 442 A.2d 63 (1982). Thus, the distinction between defaults entered in equitable and legal actions lies merely in what must be proven by the plaintiff in the

---

[10] We note that in its memorandum of decision, the trial court based its decision to treat the judgments of default as interlocutory on the fact that the plaintiff's complaint sought equitable as well as legal action. The trial court noted that in equitable actions, the plaintiff "is not entitled to any equitable relief unless he proves his right to it." The distinction made by the trial court between default judgments rendered in equitable actions and those rendered in legal actions does not, however, merit a conclusion that only those default judgments rendered in equitable actions are interlocutory in nature.

subsequent hearing on the relief to be granted. In legal actions, the plaintiff must establish that the amount of damages he claimed is appropriate, whereas in equitable actions the principles of equity require that the plaintiff prove the allegations contained in his complaint so that equitable relief may be granted. Thus, in both equitable and legal actions, the plaintiff must "establish his right to relief to the court's satisfaction, even though some issues may have been laid at rest by the default." 1 E. Stephenson, Connecticut Civil Procedure § 163, p. 656.

In the present case, the plaintiff's complaint sought both equitable and legal relief. No evidence was taken at the time the judgment was rendered by the trial court, *N. O'Neill, J.* The failure of a trial court to conduct a hearing in which such evidence is taken has been recognized as reversible error when such issue was raised by the defendant on appeal. *Darmos* v. *Pasqua,* 34 Conn. Sup. 529, 374 A.2d 814 (1976). The rationale for this conclusion is that, without such a hearing in which evidence is taken and a determination made on the basis of that evidence, the defendant has no means of "knowing what, if anything, the judge considered in rendering judgment and, therefore, [he is] deprived of a factual basis for testing the judge's action either on a motion to open or on appeal." Id., 531. The judgment is reversible, however, only when the defendant has made an attempt to contest the omission of the trial court to hold such hearing via such appropriate remedies as a motion to open the default judgment pursuant to Practice Book § 377[11] or a direct appeal from such judgment.

---

[11] Practice Book § 377 provides in pertinent part that "[a]ny judgment rendered or decree passed upon a default or nonsuit may be set aside within four months succeeding the date on which it was rendered or passed, and the case reinstated on the docket . . . upon the written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of

In the present case, the record reflects that the defendants were on notice of all proceedings relating to the entry of defaults for failure to appear at trial. The defendants furthermore failed to appear in opposition at the hearing on the plaintiff's subsequent motion for judgment. After judgment was rendered granting the equitable relief requested, the defendants failed to move to open the judgment within the four-month period provided in Practice Book § 377 or to appeal from the judgment rendered. In similar circumstances, our Supreme Court has held that the failure of a defendant to attack a judgment rendered upon a default bars a subsequent collateral attack on the judgment, even when it is claimed that the trial court rendered such judgment without requiring the plaintiff to produce evidence at a hearing in damages. *Meinket* v. *Levinson,* 193 Conn. 110, 115, 474 A.2d 454 (1984).

This case, however, is distinguishable from that of *Meinket* v. *Levinson,* supra. Here, the judgment for equitable relief was not only erroneously rendered without a hearing, but also could not have constituted a final resolution because a necessary party was missing from the effect of the judgment. The judgment therefore could not have been executed upon without another judgment involving another party.

The trial court did not err in refusing to award all of the equitable relief previously awarded by another trial court because the latter judgment could not have been final on the facts of this case, but rather was interlocutory in nature. A trial court judge may vacate, modify or depart from the interlocutory orders or rulings of another judge in the same case. *Breen* v. *Phelps,* 186 Conn. 86, 98, 439 A.2d 1066 (1982). This "is a flexible principle of many facets adaptable to the exigencies

the rendition of such judgment or the passage of such decree, and that the plaintiff or the defendant was prevented by mistake, accident or other reasonable cause from prosecuting or appearing to make the same."

of the different situations in which it may be invoked. See 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4478." *Breen* v. *Phelps, supra,* 99. Although flexible, however, the rule is not absolute in its granting of power to a trial court judge. For this reason, a trial court judge should treat another trial court judge's ruling in a case "as the law of the case, if it is of the opinion that the issue was correctly decided . . . . A judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. . . . Judge shopping is not to be encouraged and a decent respect for the views of his brethren on the bench is commendable in a judge." (Citations omitted.) Id., 99–100. Nevertheless, in appropriate circumstances, a trial court may apply its own judgment regarding an interlocutory ruling *"if the case comes before him regularly and he becomes convinced that the view of the law previously applied by his coordinate predecessor was clearly erroneous and would work a manifest injustice if followed . . . ."* (Emphasis added.) Id., 100.

In the present case, the trial court, *Satter, J.,* specifically found that the interlocutory ruling of its coordinate trial court, *N. O'Neill, J.,* in granting equitable relief was erroneous. It was therefore not error for the court, *Satter, J.,* to rescind such equitable relief and substitute its own judgment for that of its coordinate predecessor.

The trial court did, however, err in vacating the entries of default against the defendants, and in rendering judgment in favor of Edward, Jeffrey and Linda Willametz on the first count and in favor of Audrey Willametz on the third count of the complaint. An entry of default is a distinctive interlocutory ruling which serves specific purposes designated by statute, and is appropriate in such circumstances such as a defendant's failure to conform to the rules of discovery or to appear

at trial. See Practice Book §§ 352, 363. In the present case, the defaults were entered against the defendants for such reasons. The defendants, by failing to adhere to procedures and dates which were set by the court, delayed and frustrated the progress of an already complicated case, and thwarted the plaintiff's right to a judicial resolution of his complaint. Since the defaults themselves were entered properly, the trial court, *Satter, J.,* was not free to apply its own judgment in lieu of that of its predecessor trial court. *Breen* v. *Phelps,* supra, 99.

The significance of an entry of default against a defendant in a legal action is that it entitles the plaintiff to at least nominal damages. *DeBlasio* v. *Aetna Life & Casualty Co.,* supra, 401. Even when a defendant successfully disputes liability and produces evidence at the hearing in damages which disproves the allegations of the plaintiff's complaint, the plaintiff is still entitled to nominal damages. Id.; 1 E. Stephenson, Connecticut Civil Procedure § 164; *Ockershausen* v. *New York, N.H. & H.R. Co.,* 71 Conn. 617, 621, 42 A. 650 (1899). In such circumstances, however, the defendant is *not* entitled to a judgment in his favor. The entry of default, when appropriately made, conclusively determines the liability of a defendant. A defendant's wilful and inexcusable failure to appear at trial or answer questions at a deposition forever bars a judgment in his favor, even though he may later be found to be liable for only nominal damages.

In the present case, it was error for the trial court to grant no legal relief to the plaintiff against Edward, Jeffrey and Linda Willametz on the first count and against Audrey Willametz on the third count of the complaint because of the default judgments previously rendered against them. The liability of the defendants had been established with the rendering of default judgments, and the plaintiff was at the very least entitled

to nominal damages from the defendants. A contrary conclusion would permit defendants to disregard trial or deposition dates and still obtain a judgment in their favor at a hearing in damages. The punitive effect of a default judgment in such cases would thereby be eliminated.

Although there is error in the present case, no purpose would be furthered by a remand because the damages to be awarded to the plaintiff against the defendants could only be nominal based upon the substantive findings of the trial court at the hearing in damages. We therefore find that nominal damages should be awarded to the plaintiffs against these defendants on the first and third counts of the complaint.

## II

The plaintiff's remaining claims of error involve the trial court's assessment of the damages awarded on the third count of the complaint for waste, and we shall therefore consider them together. In these claims of error, the plaintiff alleges that the trial court erred in refusing to grant any damages for the destruction of the single family house located on the disputed property. The plaintiff's second and third claims of error relate to the trial court's admission of the testimony of the defendant Edward Willametz at the hearing in damages regarding the value of the property purchased, and the trial court's subsequent reliance upon such testimony in reaching its decision. The plaintiff alleges that the trial court accepted such testimony from the defendant in the capacity of an expert witness without a sufficient foundation and without a showing that the defendant possessed any specialized training or expertise to qualify him as an expert witness. The plaintiff further alleges that the evidence offered by the defendant was insufficient to permit the trial court to make a finding of the value of the prop-

erty based upon his testimony. In his fourth claim of error, the plaintiff asserts that the trial court used an improper method of valuation in denying recovery for the destruction of the house.

The plaintiff introduced evidence to support his claim that the defendant had committed waste on the fraudulently obtained property. The record reflects that the property purchased secretly by the defendant and Glen Valley Associates, Inc., in 1971 originally contained various buildings, including a seven room house and a 1100 foot driveway and pond. The defendant Edward Willametz and his mother took possession of and occupied the premises for a period of time after the closing. By 1980, however, the premises were vacated. A subsequent fire damaged the buildings, and vandalism thereafter rendered the buildings worthless. The record also indicates that the defendant had failed to carry insurance on the buildings. At the time of the hearing in damages, testimony indicated that the driveway was overgrown and the pond had disappeared. The plaintiff introduced the testimony of a real estate expert who testified that the fair market value of the property and buildings in 1971 was $42,000. The plaintiff's expert also testified that the value of the property if it had been properly maintained would have been approximately $132,000 at the time of the hearing, and that the diminution in value due to the defendants' failure to maintain the property was therefore $90,000. Another expert witness introduced by the plaintiff testified that the cost of restoring the property to the condition that it was in 1971 would be $90,000.

The defendant testified that he had considerable experience in the development of land and in the valuation of property. As the owner of the property in question, the defendant was permitted to testify, over the plaintiff's objection, as to the value of the property. The defendant testified that in his opinion, the highest and

best use of the disputed property was not as a single family residence, but rather as a subdivision of sixteen half-acre lots. He further testified that such lots would have an approximate value of $30,000 each, or a total of $480,000.

At the conclusion of the evidence presented, the trial court noted that the plaintiff's expert witnesses had neither seen the property in 1971 nor appraised the house following the fire in 1980. The trial court thus concluded that their testimony was not entitled to complete credence. The trial court found that the highest and best use of the disputed property was as a subdivision of sixteen half-acre building lots, and that the buildings would have had to have been removed anyway in order to realize such use. Therefore, the trial court awarded no damages for the destruction of the house.

It is well settled that an owner of property is competent to testify as to its market value. *Misisco* v. *La Maita,* 150 Conn. 680, 684, 192 A.2d 891 (1963). The record indicates that the defendant had owned and occupied the property in dispute, and therefore had sufficient opportunity to become acquainted with its value. Moreover, it was within the trial court's discretion to accept the defendant's qualifications as a land developer as sufficient to permit him to testify as an expert witness as to the value of the property. *Loewenberg* v. *Tiger Lee Construction Co.,* 1 Conn. App. 303, 307, 471 A.2d 665 (1984). A decision made by the trial court that a witness is qualified to testify as an expert will not be disturbed on appeal unless there has been an abuse of such discretion, or if there was a clear error involving a misconception of law. Id.; *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277 (1973). No such abuse or misconception is presented here. The record indicates that the plaintiff had the opportunity to cross-examine the defendant to test his knowledge

of the value of the property. His objection to the defendant's qualifications as an expert, therefore, goes to the weight rather than to the admissibility of the testimony.[12] *McKiernan* v. *Caldor, Inc.,* 183 Conn. 164, 167–68, 438 A.2d 865 (1981). We find no abuse of discretion in the trial court's ruling on the valuation of the property based on the testimony of the defendant.

Neither do we find an abuse of discretion in the trial court's refusal to accept the testimony of the plaintiff's expert witnesses as to the value of the property. A trial court is not bound by the opinion of the expert witnesses, but may accept or reject the testimony of such experts in whole or in part. *Birgel* v. *Heintz,* 163 Conn. 23, 30, 301 A.2d 249 (1972). The trial court found that the testimony of the plaintiff's expert witnesses was not completely credible because they had not seen the property in question at crucial time periods. "The credibility of 'expert witnesses and the weight to be accorded to their testimony are within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible.' *New Haven Water Co.* v. *Board of Tax Review,* 166 Conn. 232, 240, 348 A.2d 641 (1974) . . . ." *Ferri* v. *Pyramid Construction Co.,* 186 Conn. 682, 690, 443 A.2d 478 (1982). The record supports the trial court's conclusion, and it was therefore not error for the trial court to reject the plaintiff's expert's testimony as to either the value of the property or the adequate and appropriate remedy proposed by such experts. Id.; see also *Bowen* v. *Ives,* 171 Conn. 231, 239, 368 A.2d 82 (1976).

In his final claim of error, the plaintiff asserts that the trial court erred in its method of evaluating the

---

[12] The record indicates that the plaintiff made numerous objections to the defendant's qualifications as an expert witness and excepted to the trial court's ruling allowing the testimony. In permitting such testimony, the trial court stated:

"I've listened to the evidence, and I am convinced that he does have minimal but adequate qualifications."

property for the purpose of determining the amount of damages to be assessed against the defendants for the destruction of the single family dwelling. The plaintiff alleges that in assessing such damages, the trial court failed to consider the cost of repairs necessary as an appropriate measure of the property's diminution in value.

The basic measure of damages for injury to real property is the resultant diminution in its value. *Ferri* v. *Pyramid Construction Co.,* supra, 689. In order to assess the diminution in value, however, the trial court must first determine the value of the property, both before and after the injury has occurred. See *Whitman Hotel Corporation* v. *Elliott & Watrous Engineering Co.,* 137 Conn. 562, 573, 79 A.2d 591 (1951). In actions requiring such a valuation of property, the trial court is charged with the duty of making an independent valuation of the property involved. *E & F Realty Co.* v. *Commissioner of Transportation,* 173 Conn. 247, 253, 377 A.2d 302 (1977); *Filipetti* v. *Filipetti,* 2 Conn. App. 456, 458, 479 A.2d 1229, cert. denied, 194 Conn. 804, 482 A.2d 709 (1984). " '[N]o one method of valuation is controlling and . . . the referee may select the one most appropriate in the case before him.' " *Slavitt* v. *Ives,* 163 Conn. 198, 212, 303 A.2d 13 (1972). Moreover, a variety of factors may be considered by the trial court in assessing the value of such property. "[T]he trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation." *Greenfield Development Co.* v. *Wood,* 172 Conn. 446, 451, 374 A.2d 1084 (1977). The trial court has broad discretion in reaching such conclusion, and his determination is reviewable only if he misapplies or gives an improper effect to any test or consideration which it was his duty

to regard. Id. Such determinations are findings of fact, and therefore must stand unless clearly erroneous. *Turgeon* v. *Turgeon,* 190 Conn. 269, 275–76, 460 A.2d 1260 (1983).

In determining the value of the property at the time of the hearing the trial court considered the highest and best use of the property. This court has recognized that "[a]n assessment of land at its fair value, of necessity, regardless of the method of valuation, takes into account the highest and best value of the land." *Whitney Center, Inc.* v. *Hamden,* 4 Conn. App. 426, 428, 494 A.2d 624 (1985). Our Supreme Court has likewise recognized that in the determination of the fair market value of property, it is proper to consider the use which is being made of the property, *if, in truth, that use of the property enhances the value of it. Housing Authority* v. *Lustig,* 139 Conn. 73, 76, 90 A.2d 169 (1952). We find, therefore, that it was proper for the trial court to consider the highest and best use of the land in determining the value of the property. Moreover, it was within the trial court's discretion to accept that portion of the defendant's testimony which established that the highest and best use of the property was as a subdivision of sixteen half-acre lots, and that the value of the property at such use was $480,000 at the time of the hearing. The trial court thus concluded that no diminution in value of the property occurred because of the destruction of the single family dwelling. The trial court further concluded that because the highest and best use of the property was as a subdivision, the buildings on the property had no value, and that the value of the property lay in the land alone. The record supports the trial court's conclusions.

The plaintiff maintains that the proper measure of the diminution in value of the property was the cost of repairs required to restore the property to its prior condition in 1971. Although the diminution in value may

in some cases be determined by the cost of repairing the damage to the property, the selection of the repair measure is within the trial court's discretion. *Ferri* v. *Pyramid Construction Co.,* supra, 689. The trial court may therefore choose not to employ such measure. Id. "The trial court is not compelled to accept any evidence offered on possible repairs as the proper measure of damages for harm to real property"; id., 690; but is, rather, free to reject the testimony of expert witnesses relating to any proposed repairs claimed as an adequate and appropriate remedy. In the present case, therefore, it was not error for the trial court to refuse to measure the property's diminution in value by using the cost of repairs claimed by the plaintiff.

Moreover, it has been recognized that the cost of repairs may *not* be considered by the trial court as a measure of diminution in value when the cost of repairing the damage exceeds the former value of the property or when the repairs would enhance the value of the property over what it was before it was damaged. *Whitman Hotel Corporation* v. *Elliott & Watrous Engineering Co.,* supra, 573. In the present case, the record reflects that the plaintiff's own expert witnesses testified that the fair market value of the property in 1971 was $42,000, and that the cost of restoring the property to its prior condition would be $90,000. The record thus indicates that because the cost of repairs would exceed the former value of the property, such remedy would not be appropriate in this case.

There is error in part, the judgment against the plaintiffs, Nathaniel Ratner and Greater Connecticut Development Corporation, on the first count is set aside and the case is remanded with direction to render judgment for the plaintiffs to recover $1 against the defendants Edward Willametz, Jeffrey Willametz and Linda Willametz, and the judgment in favor of Audrey Willametz is set aside on the first count; the judgment against the

plaintiff Greater Connecticut Development Corporation on the second count in favor of the defendants Audrey Willametz, Jeffrey Willametz, and Linda Willametz, are set aside; the judgment against the plaintiff Greater Connecticut Development Corporation on the third count in favor of the defendants Audrey Willametz, Jeffrey Willametz and Linda Willametz are set aside and the case is remanded with direction to render judgment for the plaintiff to recover $1 against the defendant Audrey Willametz.

In this opinion the other judges concurred.