[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs in each of the above captioned cases are unit owners of a condominium on Water Street in South Norwalk, known as Riverside Plaza Residential Condominium. Each plaintiff, D.W. Van Dyke Company, Inc., Dennis J. Faulkner, James A. Whelan and Joseph T. Hayes, brought suit against the defendant, Riverside Plaza, Inc., developer and declarant of the project. The first counts of each suit allege breaches of express and implied warranties of quality due to various defects in construction, including faulty soundproofing, illegal venting, an improper staircase, inadequate drainage, leaking exterior walls, and cracked ceilings. See General Statutes 47-274 and 47-275, the Common Interest Ownership Act (CIOA). The second counts allege that the defendant violated General Statutes 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA), by reason of its failure to disclose the construction defects in issue, and CT Page 2985 had also failed to negotiate in good faith the manner in which the defects would be remedied.[1]
The four cases were referred to Attorney Bernadette Coomaraswamy, an attorney trial referee, in accordance with General Statutes 52-434(a) and Practice Book 428 et seq. Hearings were held over the course of eleven days, and approximately one hundred and ten exhibits were introduced. Thereafter, the attorney trial referee filed her report containing a number of findings of fact, including that: (1) the floors deviated from the specifications in the building plans; (2) there were acoustical problems; (3) the skylights were leaking as were the exterior roofs; (4) the drainage in the parking lot was inadequate; (5) the ceilings were cracked in places; (6) the aforesaid damages occurred before the unit owners' association was formed; and (7) in addition to construction defects, plaintiff Faulkner suffered water damage to his rugs.
The attorney trial referee concluded on the basis of her findings of fact that: (1) the plaintiffs were entitled to recover a total of approximately $59,000, divided individually among the four plaintiffs as follows: Van Dyke, $10,045; Faulkner, $13,857; Whelan, $14,155; and Hayes, $8,374, plus in effect $10,000 attorney's fees and $2,900 fees for experts; (2) the awards were based on the cost of "putting the plaintiffs' premises in as closely the condition warranted under their contracts"; (3) the unit owner's association was not an indispensable party as an agreement between the developer and the association specifically permitted the plaintiffs to pursue their individual suits; (4) the defendant developer breached warranties of quality created by General Statutes 47-274 and 47-275; and (5) the defendant had not violated CUTPA.
In accordance with Practice Book 438, both the plaintiffs and the defendant moved to correct the attorney trial referee's report. The motion filed by the plaintiffs sought several corrections, including that: (1) defendant only began to make corrections after the plaintiffs began their suits, and that it failed to make bona fide efforts to remedy the defects; (2) violations of the Building Code by the defendant constituted a violation of CUTPA; and (3) the full amount of attorney's fees, approximately $45,000, should have been awarded. The motion to correct filed by plaintiffs was denied by the attorney trial referee. CT Page 2986
The defendant sought approximately fifty-seven corrections to the attorney trial referee's findings of fact. For the most part the requests represent a whole-scale attempt to persuade the referee to substitute its version of the facts for those the referee actually found. This practice was discountenanced in, for example, Argentis v. Gould, 23 Conn. App. 9, 19,579 A.2d 1078 (1990). Moreover, Wilcox Trucking, Inc. v. Mansour Builders, Inc., 20 Conn. App. 420, 425, 567 A.2d 1250, cert. denied, 214 Conn. 804, 573 A.2d 318 (1990), held that in contract actions "findings of fact should be overturned only when they are clearly erroneous." The requested corrections did, however, include the following: (1) that the four plaintiffs have no standing to receive compensation for faulty construction of the common elements, because this is the province of all the unit owners and/or the owners' association; (2) the recommendation of the attorney trial referee regarding reimbursing the four plaintiffs included in large part compensation for defects in the common elements; (3) there was no basis for the award of attorney's fees because the referee had determined that the defendant had not violated CUTPA, and that there was no other possible legal justification for such a recommendation; (4) the recommended measure of damages, cost of repair, was improper, as the correct measure would be diminution in market value of each plaintiff's unit, citing Ratner v. Willametz, 9 Conn. App. 565,586, 520 A.2d 621 (1987); and (5) neither General Statutes 47-274
nor 47-275 authorizes suits by a unit owner with respect to the common elements.
The referee declined to make any corrections in her report in response to the defendant's motion, but did note that the recommended award of damages was essentially for damage to the individual plaintiff's unit, and that she had recommended the award of attorney's fees not on the basis that CUTPA had been violated, but rather because such an award "was well within the discretion of the Trier."
Pursuant to Practice Book 439, the defendant, Riverside Plaza, Inc., then filed exceptions to the report asking this court to correct the report, and in connection therewith filed excerpts from the required transcript. The defendant moved that the exceptions be rejected because the complete transcript had not been filed, and no agreement had been reached regarding filing only a portion thereof. Practice Book 439. This motion was denied on December 10, 1992, and the remainder of the CT Page 2987 transcript was thereafter filed. The exceptions filed by the plaintiffs assert that the attorney trial referee erred by failing to make the corrections set forth in its motion to correct, including her finding of certain facts for which there was no evidence, and also by failing to find other-material facts which were either admitted or undisputed. Practice Book 440.
The defendant also filed objections to the acceptance of the report, Practice Book 440, on the grounds, among others, that: (1) the individual unit owners had no right to bring suit with respect to deficiencies in the common elements, but rather only all the unit owners and/or the unit owners' association had standing to pursue such an action; see W.G. Glenney Co. v. Bianco, 27 Conn. App. 199, 203, 604 A.2d 1345 (1992), regarding indispensable parties; (2) even if these four plaintiffs had standing to initiate these suits, their recovery must be limited to their respective percentage ownership of the common elements; and (3) there was no authority for the award of attorney's fees.
It should be noted at this point that this court's authority in reviewing an attorney trial referee's recommendations is a limited one. As our Supreme Court held in Dills v. Enfield,210 Conn. 705, 714, 557 A.2d 517 (1989): (1) the trial court may not "retry the case"; (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the (referee) has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear"; and (3) a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716. However, it is also true that "a referee's determinations of law in his or her report are not binding on the court . . . (which) has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee . . . we therefore conclude that the trial court has the inherent authority . . . to render whatever judgment was appropriate in light of the facts found by the attorney trial referee." (citations and internal quotation marks omitted). Id., 713.
This court's task, according to Bernard v. Gershman,18 Conn. App. 652, 656, 559 A.2d 1171 (1989), is to determine whether the conclusions of fact and law in the referee's report "are legally and logically correct and whether they find support in the facts found by the referee." Practice Book 440. This CT Page 2988 procedure would appear to be similar to that employed by an appellate court in reviewing a decision of the trial court. "On appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous. . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . ." (citations and internal quotation marks omitted). Fortier v. Newington Group, 30 Conn. App. 505, 509, ___ A.2d ___ (1993).
The main issue in this case is whether the plaintiffs have been awarded compensation for defects in the common elements, and if so, whether the association of unit owners, rather than the plaintiffs, should have brought this action and received compensation. In reviewing the report of the attorney trial referee it is difficult to make this determination with any degree of precision, and therefore these cases are remanded to the referee with the request that a supplementary report be issued addressing the question of whether the recommended award to the plaintiffs encompasses solely defects in the plaintiffs' respective units, or whether damage to the common elements is also included. See General Statutes 47-221 concerning "unit boundaries." Moreover, as noted in footnote #1, supra, the condominium association and the developer agreed on a fixed sum which was used by the association to remedy certain defects in the common elements.
The recommended award of attorney's fees should also be clarified since such fees were not recommended on the basis that CUTPA had been violated. It is requested that the supplementary report indicate the specific authority, statutory or otherwise, for the award of attorney's fees to the plaintiffs, including recommendation.[2]
So Ordered.
Dated at Stamford, Connecticut, this 29th day of March, 1993.
William B. Lewis, Judge CT Page 2989